**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOSE JUAN GALLEGOS, LILIAN | ) | |
| PATRICIA PANAMA, FIDEL VINEGAS, | ) | |
| HUGO SANCHEZ, on behalf of themselves | ) | |
| and all other persons similarly situated, | ) | |
| known and unknown, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | Case No. 12 C 4032 |
| v. | ) | |
| | ) | Magistrate Judge Finnegan |
| MIDWAY BUILDING SERVICES, LTD., | ) | |
| MIDWAY SERVICES, INC. d/b/a | ) | |
| BRILLANTE BUILDING SERVICES, INC., | ) | |
| LIBERTY BUILDING MAINTENANCE, | ) | |
| INC. and MIDWAY BUILDING GROUP, INC.) | | |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE**
**PARTIES' STIPULATION OF SETTLEMENT AND FOR APPROVAL OF CLASS**
**CERTIFICATION, FORM AND MANNER OF CLASS NOTICE, AND SCHEDULING**
**FAIRNESS HEARING FOR FINAL APPROVAL OF SETTLEMENT**

Plaintiffs Jose Juan Gallegos, Lillian Patricia Panama, Fidel Vinegas, and Hugo Sanchez

("Plaintiffs") on behalf of themselves and all others similarly situated, through their counsel,

move this Court for an order preliminarily approving the Parties' Stipulation of Settlement

(attached hereto as Attachment 1) (hereinafter, the "Settlement Agreement") and an order

approving class certification, the form and manner of class notice, scheduling a Fairness Hearing

for final approval of settlement and the form and manner of the claims process. Defendants

Midway Building Services, LTD., Midway Services, Inc., d/b/a Brillante Building Services, Inc.,

Liberty Building Maintenance, Inc., and Midway Building Group, Inc. (collectively

"Defendants") do not oppose this Motion. In further support of this Motion, the Plaintiffs state as

follows:

I.      **PROCEDURAL BACKGROUND AND SUMMARY OF THE COMPLAINT**

On May 23, 2012, a class action lawsuit was filed in the U.S. District Court for the Northern District of Illinois. On August 6, 2012, a First Amended Complaint was filed. The case is currently titled *Jose Juan Gallegos, Lillian Patricia Panama, Fidel Vinegas, and Hugo Sanchez, on behalf of themselves and other similarly situated persons v. Midway Building Services, LTD., Midway Services, Inc., d/b/a Brillante Building Services, Inc., Liberty Building Maintenance, Inc., and Midway Building Group, Inc,* Case No. 12 C 4032.

Counts I and II of the First Amended Complaint allege a failure to pay minimum wages to Plaintiffs and other similarly situated employees in violation of the FLSA and IMWL. Counts III and IV allege a failure to pay overtime wages to Plaintiffs and other similarly situated employees in violation of the FLSA and IMWL. Count V alleges a failure to pay Plaintiffs for all time worked at the rate agreed to by the parties in violation of the IWPCA. Count VI alleges a failure to pay Plaintiffs for earned vacation time in violation of the IWPCA. Counts VII, VIII and IX allege unlawful retaliation against Plaintiffs for exercising rights protected under the FLSA, IMWL and IWPCA, respectively.

II.     **STANDARD FOR PRELIMINARY APPROVAL**

The settlement or compromise of a class action requires district court approval. Fed.R.Civ.P. 23(e); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997). The law encourages settlement of class actions, and a voluntary settlement is the preferred method of class action resolution. *Isby, et al. v. Bayh, et al.*, 75 F.3d 1191, 1196 (7th Cir. 1996).

In ruling on a motion for preliminary approval of a class action settlement, the district court must determine whether the proposed settlement is within a "range of reasonableness," such that sending notice to the class is warranted. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) ("in assessing the settlement, the Court must determine whether

it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation") (internal citations omitted). If the proposed agreement presents no apparent defects or other indicia of unfairness, then the court should direct that notice of a fairness hearing be given to the class members, where evidence and argument may be presented for and against the proposed settlement. *Staton v. Boeing Co.*, Inc., 327 F.3d 938 (9th Cir. 2003).

## III.    CERTIFICATION OF SETTLEMENT CLASS IS APPROPRIATE

As part of the settlement of this matter, the Parties have agreed to seek certification of the following class:

> All current and former non-union, hourly employees of Midway Building Services, LTD., Midway Services, Inc., d/b/a Brillante Building Services, Inc., Liberty Building Maintenance, Inc., and/or Midway Building Group, Inc. who worked for Defendants in Illinois from May 23, 2009 through October 28, 2012 and who have an alleged claim for wages, vacation pay and/or uncompensated work time.

The class is made up of 395 non-union hourly employees who worked for Defendants, a complete list of whom is attached to the Stipulation of Settlement as Attachment 1.

A district court has broad discretion in determining whether the parties have made a showing that class certification is appropriate. *Keele v. Wexler,* 149 F.3d 589, 592 (7th Cir. 1998). In this regard, the Court should not resolve any factual disputes and should not conduct a preliminary inquiry into the merits of the suit. *Eisen v. Carlisle & Jacqelin*, 417 U.S. 156, 177 (1974); *Orlowski v. Dominicks's Finer Foods, Inc*., 172 F.R.D. 370, 373-74 (N.D. Ill. 1997). Rather, the court should accept as true all well-pleaded allegations of the complaint. *Eisen,* 417 U.S. at 177-78; *Allen v. City of Chicago,* 828 F. Supp. 543, 550 (N.D. Ill. 1993). The Court's role is to determine whether Plaintiffs are asserting a claim which, assuming its merits, would satisfy the requirements of Rule 23. *See H. Newberg on Class Actions*, §24.13 at 60 (3d ed. 1992)(hereafter "Newberg"); *Eisen*, 417 U.S. at 178.

3

### A.    Plaintiffs' Class Claims Should be Certified as a Class Action

Rule 23 requires a two-step analysis to determine whether class certification is appropriate. First, the action must satisfy all four requirements of Rule 23(a). That is, "the plaintiff must meet the prerequisites of numerosity, commonality, typicality, and adequacy of representation." *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993) (internal quotation marks omitted). Second, the action must satisfy one of the conditions of Rule 23(b). *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977).

Rule 23(b) is satisfied on a showing of one of three circumstances: (1) separate lawsuits would create the risk of inconsistent judgments or would be dispositive of the interests of nonparty class members; or (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or (3) questions of law or fact common to the class predominate over questions affecting individual members, and the class action is superior to other available methods. Fed. R. Civ. P. 23(b)(1) – (3).

Plaintiffs' class claims meet the requirements for class treatment of this Lawsuit.

### 1.    Certification Under Rule 23(a)

### a.    Numerosity -- Rule 23(a)(1)

The class is so numerous that joinder of all members is impracticable. To determine whether joinder is impracticable courts must consider the circumstances unique to each case. *Swanson v. Am. Consumer Indus.*, 415 F.2d 1326, 1333 (7th Cir. 1966). These circumstances include whether it is feasible for class members to bring individual suits and whether it is judicially efficient for the court to try such individual cases. *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996). "To require a multiplicity of suits by similarly situated small claimants would run counter to one of the prime purposes of a class action." *Swanson*, 415 F.2d

at 1333. "[W]hile there is no number requiring or barring a finding of numerosity, a class of more than 40 members is generally believed to be sufficiently numerous for Rule 23 purposes." *Toney v. Rosenwood Care Ctr., Inc.*, No. 98 C 0693, 1999 U.S. Dist. LEXIS 4744, at *22 (N.D. Ill. March 31, 1999); See also *Swanson,* 415 F.2d at 1333 n.9 (7th Cir. 1969) (40 class members establish numerosity). In this case, the Parties have established there are approximately 400 claimants in the putative class. The size of this putative class easily satisfies Rule 23(a)(1).

### b.     Commonality -- Rule 23(a)(2)

For a class to be certified, questions of law or fact must exist common to the class. Fed. R. Civ. P. 23(a)(2). "[T]he cases have not been overly restrictive in setting out the requirements for commonality, with the existence of a common nucleus of operative fact usually being enough to qualify …" *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992). In order to satisfy this requirement, there needs to be just one common question of law or fact. *Arenson v. Whitehall Convalescent and Nursing Home*, 164 F.R.D. 659, 663 (N.D. Ill. 1996).

A common question may be shown where claims of individual members are based on the common application of a statute, or where class members are aggrieved by the same or similar conduct. *Keele,* 149 F.3d at 592 (7th Cir. 1998). Where a movant shows that the successful adjudication of the class representatives' individual claims will establish a right of recovery, or resolve a core issue on behalf of the class members, this prerequisite is met.

Here, Plaintiffs' claims are based on questions of fact and law common to the class. Plaintiffs allege that all non-union, hourly laborers employed by Defendants were subjected to the same company-wide policies which violated federal and Illinois law, specifically that all of Defendants' hourly employees in Illinois: (1) were not paid for time spent traveling between sites or other work performed "off the clock" and, as a result, were paid less than the federal-mandated and/or Illinois-mandated minimum wages in certain work weeks during the class

5

period; (2) were not paid overtime premiums for hours worked in excess of forty (40) per week; and (3) were not paid for all earned vacation pay as part of their final wages upon termination from employment. Further, differences among the class members regarding damages are not relevant for certification purposes. "The commonality requirement may be met if the common question goes to liability despite individual differences in damages." *Jenson v. Eveleth Taconite Co.*, 139 F.R.D. 657, 664 (D. Minn. 1991).

Common questions include (1) whether Defendants failed to compensate Plaintiffs and Class Members for all time worked; (2) whether Defendants' alleged failure to compensate Plaintiffs and Class Members for all time worked resulted in violation of Defendants' obligation to pay federal and Illinois mandated minimum wages to Plaintiffs and Class Members; (3) whether Defendants' alleged failure to compensate Plaintiffs and Class Members for all time worked resulted in a violation of Defendants' obligation to pay overtime wages to Plaintiffs and Class Members; and  (4) whether Defendants' vacation policy caused its employees to forfeit earned and accrued vacation pay.

### c.        Typicality -- Rule 23(a)(3)

The issue of typicality is closely related to that of commonality. *Rosario*, 963 F.2d at 1018. To satisfy the typicality requirement of Rule 23(a)(3), the class representative's claims must arise from the same practice or course of conduct and be based on the same legal theory as the claims of class members. *Keele*, 149 F.3d at 595; *De La Fuente v. Stokely-Van Camp, Inc*., 713 F.2d 225, 232 (7th Cir. 1983). "Typical does not mean identical, and the typicality requirement is liberally construed." *Gaspar v. Linvatec Corp*., 167 F.R.D. 51, 57 (N.D. Ill. 1996). Moreover, "typicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class

members." *Wagner v. Nutrasweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996). The claims here of Plaintiffs and Class Members arise from the same alleged conduct of Defendants.

Typicality is meant to ensure that the claims of the class representatives have the "same essential characteristics as the claims of the class at large." *Retired Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). That is the case here.

### d.    Adequacy of Representation -- Rule 23(a)(4)

#### i.    *Named Plaintiffs will adequately represent interests of the class.*

Rule 23(a)(4) requires the named class representatives "will fairly and adequately protect the interests of the class." "The adequacy of representation requirement has three elements: (1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class; (2) the named representative must have a "sufficient interest in the outcome to ensure vigorous advocacy; and, (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously." *Gammon v. G.C. Services, Limited Partnership*, 162 F.R.D. 313, 317 (N.D. Ill. 1995)(internal citations omitted). "The burden of demonstrating adequacy under this standard, nevertheless, is not a heavy one." *Nielsen v. Greenwood*, No. 91 C 6537, 1996 U.S. Dist. LEXIS 14441, at *16 (N.D. Ill. Sept. 27, 1996).

Plaintiffs satisfy this standard here. Plaintiffs do not have antagonistic or conflicting claims with other members of the class. Plaintiffs and the class were all employed by Defendants as employees and all seek unpaid wages for "off the clock" work (including minimum and overtime wages), as well as earned vacation pay. Plaintiffs do have additional disputed claims (set forth in Counts VII, VIII, and IX) and potential claims or remedies not alleged in the Complaint (reinstatement), but such claims do not conflict with the other class claims.

Plaintiffs also have a sufficient interest in the outcome to ensure vigorous advocacy. The burden of establishing this element is not difficult. A class representative need only possess general knowledge of the case and participate in discovery. *Sebo v. Rubenstein*, 188 F.R.D. 310, 316 (N.D. Ill. 1999). Plaintiffs here understand the general foundation of the case and each has participated in the Parties' informal discovery, information exchange and settlement negotiations, including a Court-assisted settlement conference. Further, Plaintiffs attended the settlement conference conducted by this Court and assisted in reaching a class-wide resolution of this matter. This qualifies them as "conscientious representative plaintiffs" and satisfies this element. *Robles v. Corporate Receivables, Inc*., 220 F.R.D. 306, 314 (N.D. Ill. 2004).

### ii. *Plaintiffs' Counsel Should be Appointed Class Counsel*

Rule 23(g) requires that courts consider the following four factors when appointing class counsel: (1) the work counsel has performed in identifying the potential class claims, (2) class counsel's experience in handling complex litigation and class actions, (3) counsel's knowledge of the applicable law, and (4) the resources that class counsel will commit to representing the class. Fed. R. Civ. P. 23(g). In this case, all of these requirements are met. Plaintiffs' attorneys have extensive experience and expertise in complex employment litigation and class action proceedings, and are qualified and able to conduct this litigation. Plaintiffs' counsel, Christopher J. Williams and Alvar Ayala, have been lead counsel or co-counsel in over 300 wage and hour cases filed in the Circuit Court of Cook County and the Northern District of Illinois. The majority of these cases set forth class claims under the FLSA, the IMWL, the IWPCA, the IDTLSA and the ECA and proceeded as class actions and/or collective actions under §216(b) of the FLSA.[1]

---

[1] Plaintiffs' Counsel has regularly been designated as class counsel in class action employment litigation including, but not limited to, most recently: *Craig v. EmployBridge et al.,* Case No. 11-C-3818 (Closed 04/04/13); *Ramirez et*

8

Plaintiffs' attorneys are qualified and able to conduct the proposed litigation vigorously.

**B.      This Action Satisfies the Requirements of Rule 23(b)**

In addition to meeting the requirements of Rule 23(a), a class action must also satisfy the requirements of one of the subdivisions of Rule 23(b). Rule 23(b)(3) provides that a class can be maintained if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The Parties seek certification under Rule 23(b)(3). See *Allen v. International Truck and Engine Corp*., 358 F.2d 469, 472 (7th Cir. 2004).

Rule 23(b)(3) allows an action to be maintained as a class action if the court finds that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual class members" and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In determining "superiority", the court should look to non-exhaustive factors: the interest of class members in individually controlling separate actions, any litigation concerning the controversy already commenced, the desirability or undesirability of concentrating the litigation, and the manageability of the class action. *Id*. The Seventh Circuit has concluded that classes seeking substantial damages may be certified under Rule 23(b)(3). *Jefferson v. Ingersoll*

---

*al. v. Paramount Staffing, Inc. et al.,* Case No. 11-C-4163 (Closed 01/29/13); *Bautista et al v. Real Time Staffing, Inc.,* Case No. 10-C-0644 (Closed 09/06/12); *Ochoa et al v. Fresh Farms International Market, Inc. et al.,* Case No.11-C-2229 (Closed 07/12/12); *Jones et al v. Paramount Insourcing Solutions, Inc.,* Case No. 11-C-3331 (Closed 05/04/12); *Francisco et al v. Remedial Environmental Manpower, Inc. et al.,* Case No. 11-C-2162, (Closed 04/25/12); *Alvarez et al v. Staffing Partners, Inc. et al.,* Case No. 10-C-6083 (Closed 01/17/12); *Craig et al v. Staffing Solutions Southeast, Inc.,* Case No. 11-C-3818 (Pending, Filed 06/06/11); *Andrade et al v. Ideal Staffing Solutions, Inc. et al.,* Case No. 08-C-4912 (Closed 03/29/10); *Arrez et al v. Kelly Services, Inc.,* Case No. 07-C-1289 (Closed 10/08/09); *Acosta et al v. Scott Labor LLC et al.,* Case No. 05-C-2518 (Closed 03/10/08); *Ortegon et al v. Staffing Network Holdings, LLC et al.,* Case No. 06-C-4053 (Closed 03/13/07); *Garcia et al v. Ron's Temporary Help Services, Inc. et al.,* Case No. 06-C-5066 (Closed 04/03/07); *Camacho et al v. Metrostaff, Inc. et al*., Case No. 05-C-2682 (Closed 05/17/06).

*International Inc.*, 195 F.3d 894, 898 (7th Cir. 1999). The courts have certified similar class claims seeking unpaid wages and statutory penalties under Rule 23(b)(3). *See De Leon-Granados v. Eller and Sons Trees, Inc.*, 497 F.3d 1214 (11th Cir. 2007) (claim for unpaid wages under the Migrant and Seasonal Agricultural Worker Protection Act (AWPA)); *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 612-14 (C.D. Cal. 2005) (claim, *inter alia*, for unpaid wages and itemized payroll statements under California law).

The common questions of law and fact in this case predominate over any individual issues. The dominant legal issues are (1) whether Defendants failed to compensate Plaintiffs and Class Members for all time worked; (2) whether Defendants' alleged failure to compensate Plaintiffs and Class Members for all time worked resulted in violation of Defendants' obligation to pay federal and Illinois mandated minimum wages to Plaintiffs and Class Members; (3) whether Defendants' alleged failure to compensate Plaintiffs and Class Members for all time worked resulted in a violation of Defendants' obligation to pay overtime wages to Plaintiffs and Class Members; and  (4) whether Defendants' vacation policy caused its employees to forfeit earned and accrued vacation pay.

The predominance requirement is also satisfied where a "common nucleus of operative fact," for which the law provides a remedy, exists among all class members. *Chandler v. Southwest Jeep-Eagle, Inc*., 162 F.R.D. 302, 310 (N.D. Ill. 1995). What matters for purposes of class certification, in addition to the existence of common questions of law and fact, is the capacity of the class-wide proceeding to generate common answers. The questions of law and fact "must be of such a nature that they are capable of class-wide resolution—which means that determination of their truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes v. Walmart Store, Inc.,* 131 S. Ct. 2541 (2011) at 2551. In this case, there is a common nucleus of operative fact that concerns the company-wide

application of Defendants' compensation policies (Counts I through VI). Whether or not a court would determine that those common questions resulted in a violation of the cited statutes, Defendants' policies applied to all class members equally and a determination as to their truth or falsity will resolve the claims of all class members in one stroke.

Further, a class action is superior to other methods of adjudication in this case. Judicial economy and efficiency, as well as consistency of judgments would be achieved through the certification of the class. *See Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181 (N.D. Ill 1992). The alternative is potentially *hundreds* of individual lawsuits and piecemeal litigation.

## IV.  CERTIFICATION OF THE CLASS UNDER 29 U.S.C § 216(B) COLLECTIVE ACTION IS ALSO APPROPRIATE

As stated, Plaintiffs brought claims under both Illinois state law and the FLSA.  The FLSA provides that an action to recover liability for unpaid overtime compensation "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. §216(b).  In order to be included in an action brought on behalf of a group of similarly situated employees, a claimant must affirmatively opt into the action. *Id*.  Under the FLSA's opt-in procedure, plaintiff is required to show that there are "similarly situated employees who are potential claimants." Smallwood v. Illinois Bell Tel. Co., 710 F. Supp. 2d 746, 750 (N.D. Ill. 2010). The plaintiff can do this by making a "modest factual showing" that he and other potential plaintiffs were victims of a common unlawful policy or plan. *Id*. (*quoting Flores v. Lifeway Foods, Inc.,* 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003)). "[A] plaintiff need only demonstrate a factual nexus that binds potential members of a collective action together." Gambo v. Lucent Techs., Inc., No. 05 C 3701, 2005 WL 3542485, *4 (N.D. Ill. Dec. 22, 2005).  The Court does not resolve factual disputes, decide substantive issues going to the merits or make credibility determinations. *Marshall v.*

*Amsted Indus., Inc.,* No. 10-cv-11-MJRCJP, 2010 WL 2404340, * 5 (S.D. Ill. June 16, 2010).

The Court will conditionally certify the collective action and will authorize notice of the action to potential plaintiffs who may want to join. *Smallwood*, 710 F. Supp. 2d at 750.

The standard at the notice stage is lenient, *Russell*, 575 F. Supp. 2d at 933, and courts have broad discretion to implement the notice provisions of § 216(b), *Hoffman-La Roche*, 493 U.S. at 169. At a defendant's request, and after the opt-in period and further discovery, a defendant may challenge "whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Smallwood*, 710 F. Supp. 2d at 750 (internal quotations omitted). Here, the Defendants do not oppose having this matter be settled, as described herein and in the parties' Settlement Agreement nor does it oppose class certification solely for settlement purposes.

Thus, Defendant also does not oppose a certification of both the 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 classes in this matter for the purpose of effectuating the parties' settlement. Defendant will advise the appropriate state and federal officials of the settlement as required by the Class Action Fairness Act ("CAFA") and shall submit proof of compliance with CAFA to the Court prior to the hearing on final approval.

## V. THE PARTIES' PROPOSED SETTLEMENT

After extensive negotiations, including numerous in-person and telephonic meetings between Counsel, investigation by the Parties and their Counsel, and a Court assisted settlement conference, the Parties have reached an agreement to settle Plaintiffs' claims on a class-wide basis for unpaid wages, including unpaid minimum wages and overtime wages resulting from non-payment of travel time and other "off the clock" work, as asserted in Counts I through V; and for vacation pay claims as asserted in Count VI; and to resolve Plaintiffs' individual claims of retaliation (Counts VII through IX) against Defendants.

### A.     The Settlement Class Definition and Settlement Period

As part of the Settlement, with regard to the class claims asserted in Counts I through VI of the First Amended Complaint, the Parties seek certification of the following class for settlement purposes:

> All current and former non-union, hourly employees of Midway Building Services, LTD., Midway Services, Inc., d/b/a Brillante Building Services, Inc., Liberty Building Maintenance, Inc., and/or Midway Building Group, Inc. who worked for Defendants in Illinois from May 23, 2009 through October 28, 2012 and who have an alleged claim for wages, vacation pay and/or uncompensated work time.

### B.     The Settlement Amount

Under the terms of the Settlement Agreement, Defendants will pay a total Settlement Amount of Two Hundred Twenty Five Thousand and 00/100 Dollars ($225,000.00), to be apportioned as follows: (1) One Hundred Thousand and 00/100 Dollars ($100,000.00) less administration costs[2] ("Gross Class Settlement Fund") to resolve claims of class members who file valid claims; (2) Sixty Thousand and 00/100 Dollars ($60,000.00) to resolve Named Plaintiffs' claims for owed wages as well as Named Plaintiffs' claims for retaliation and wrongful discharge; (3) and Sixty-Five Thousand and 00/100 Dollars ($65,000.00), or twenty-eight and 8/9 percent (28 8/9%) of the Settlement Amount, for all past and future attorneys' fees and costs expended.

Each Class Member shall be allocated a proportionate share of the Gross Class Settlement Fund after the Gross Class Settlement Fund has been reduced by (1) administrator fees and costs; and (2) a $5.00 minimum payment for each member of the Settlement Class.  The Gross Class Settlement Fund as reduced by the foregoing amounts shall be referred to as the

---

[2] Class Counsel has obtained a good faith quote of $9,725 from the Administrator to perform the work described in this Motion and related to the documents.  To the extent that the Administrator Fees and Costs for good reason shown are higher than $9,725, with the approval of all parties, the Class Settlement distributions shall be adjusted so that the Gross Settlement total remains at $100,000 exactly.

"Remaining Class Settlement Fund." The Parties propose the following formula for Class Settlement distributions and will be made on a claims-made basis. Each Class Member's proportionate share of the Class Settlement Distribution shall be calculated by the Class Administrator as follows:

- Each Class Member shall receive one (1) share for every week the payroll records reflect the Class Member worked overtime but was not paid overtime between May 23, 2009 through October 28, 2012. The resulting calculation for each Class Member is the "Individual Class Member Numerator."

- Add up all the Individual Class Member Numerators to obtain the "Total Class Member Denominator."

- To determine the "Resulting Decimal" for each Class Member, divide the Class Member's Individual Class Member Numerator by the Total Class Member Denominator.

- To determine the Settlement Share for each Class Member, multiply the Resulting Decimal for each Class Member by the Remaining Class Settlement Fund.

- The Settlement Share for each Class Member shall be added to the $5.00 flat payment to determine the Class Member's Settlement Award.

Each class member who files a successful Proof of Claim will, thus, be eligible to receive a share of the Gross Class Settlement Fund based on the amount of hours worked by the Class Member and the number of potential claims.

In addition to the above referenced relief, to the extent that there is any remainder amount from the Gross Class Settlement Fund, half of such remainder amount shall be donated by Defendants to an IRS 501(c)(3) tax-exempt non-profit legal service organization, the Working

Hands Legal Clinic to help support their ongoing mission to assist low-wage workers throughout the greater Chicago area, and the other half will revert to Defendants.

### C.      Release and Bar of Claims

All Class Members who have not excluded themselves from the Settlement by filing timely "opt out" notices with the Court shall be deemed to have relinquished all claims as set forth in Section 7.2 and 7.3 of the Settlement Agreement, and to have released Defendants and the other released parties from all liability arising out of those claims.

Upon granting final approval of the Settlement, the Court shall dismiss this matter *with prejudice*, retaining jurisdiction solely for the purpose of interpreting, implementing, and enforcing the Settlement Agreement consistent with its terms.

### D.      Named Plaintiff Payments

In addition, as part of the Agreement, Defendants will pay a total of $60,000.00 in payments to Named Plaintiffs Jose Juan Gallegos, Lillian Patricia Panama, Fidel Vinegas, and Hugo Sanchez for their claims asserted in the Lawsuit and claims that could have been asserted, including any claims for retaliation or wrongful termination. Said payments to Named Plaintiffs will be distributed as follows: Each Named Plaintiff shall receive a payment of $5,000.00 for settlement of each Plaintiff's wage claim, less appropriate withholding of federal, state, and local income taxes, and the Named Plaintiff's share of Federal Insurance Contributions Act (FICA) taxes. Defendants shall issue an IRS form W-2 for such payments.  Each named Plaintiff shall also receive a payment of $10,000.00 as liquidated damages and for Plaintiffs alleged retaliation claim. This amount shall be paid without withholding and Defendants shall issue an IRS form 1099 for such payments.

### E.      Attorneys' Fees

Finally, Defendants will pay $65,000.00, equivalent to twenty-eight and 8/9 (28 8/9%) of the total Settlement Amount, to Class Counsel as payment for all past and future attorneys' fees that have been or will be expended and for all costs incurred and that have or will be incurred in seeing this matter through Final Approval, including but not limited to: (i) obtaining Preliminary Approval from the Court; (ii) working with the Claims Administrator; (iii) responding to inquiries from Putative Class Members regarding the Settlement; (iv) assisting Putative Class Members; (v) assisting in resolving any objections; (vi) defending the Settlement and securing the Final Order, including the conduct of any appellate action. Payment of attorneys' fees and costs pursuant to this section shall be paid from the Settlement Amount but shall be separate from and in addition to the Gross Class Settlement Fund.

## VI.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL

### A.  Settlement and Class Action Approval Process

As a matter of "express public policy," federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned"); *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (gathering cases). The traditional means for handling claims like those at issue here — individual litigation — would unduly tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual Class Members, would be impracticable. The proposed Settlement therefore is the best vehicle for Class members to receive the relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

(1)    Preliminary approval of the proposed settlement at an informal hearing;

(2)    Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3)    A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Compl. Lit.*, at § 21.632–34. This procedure, used by courts in this Circuit and endorsed by class action commentator Prof. Herbert Newberg, safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, at § 11.22, *et seq.*

With this motion, the Parties request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. *Id.* at § 11.25 at 11-36, 11-37. The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *See Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1106 (D.C. Cir. 1985) ("Rule 23 places the determination [to approve or reject a proposed settlement] within the sound discretion of the trial judge who can be sensitive to the dynamics of the situation"); *City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion).

The Court's grant of preliminary approval will allow all Class Members to receive Notice of the proposed Settlement's terms and of the date and time of the fairness hearing, at which Class Members may be heard regarding the Settlement, and at which further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented. *See Manual for Compl. Lit.*, at §§ 13.14, 21.632. Although the Parties have requested a hearing with oral argument, neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling parties, and may conduct any necessary hearing in court or in chambers, at the Court's discretion. *Id.* § 13.14.

### B. The Criteria for Preliminary Settlement Approval Are Satisfied.

#### 1. The proposed Settlement offers a beneficial resolution to this litigation, thus warranting both this Court's preliminary approval and an opportunity for the Class Members to consider its terms.

A proposed settlement may be approved by the trial court if it is determined to be "fundamentally fair, adequate, and reasonable." *City of Seattle*, at 1276. In affirming the trial court's approval of the settlement in *City of Seattle*, the Ninth Circuit noted that it "need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id.* at 1291 (internal quotation and citation omitted). The district court's ultimate determination "will involve a balancing of several factors" which may include:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel . . . and the reaction of the class members to the proposed settlement.
>
> *Id.*

18

Plaintiffs allege, on behalf of the identified class, that Defendants failed to compensate them for travel time and other "off the clock" work, overtime premiums and for vacation pay which had accrued and they had earned. Defendants deny that these practices occurred, or contend that, to the extent that they may have occurred, they were not unlawful or were incidental.

Given the uncertainty of whether the claims could be certified for class treatment and the difficulties of proof, the terms of the Settlement Agreement compromising the class claims are fair and reasonable. Counsel for both Parties are experienced in class action litigation. Based on their collective experience, the claim rate in class settlements in this industry is typically very low, generally well below 50%. The Parties negotiated Settlement amount of Two Hundred Twenty Five Thousand and 00/100 Dollars ($225,000.00), which the Parties believe will be adequate to provide Class members who file valid claims with substantial recovery proportional to the hours they worked or Defendants. Defendants believe that the amount of the funds exceeds the amount of any damages that Class members have incurred, but has determined that settlement is preferable to litigating this matter.

In addition, the Parties have agreed to designate a non-profit legal service organization, the Working Hands Legal Clinic, as the recipient of a donation from Defendants for half of any remainder amounts.[3] Under this Agreement, funds resulting from the Parties' inability to locate putative class members who might otherwise be able to make a claim on the Gross Class

---

[3] Working Hands Legal Clinic ("WHLC") is a non-profit legal services organization whose mission is to assist low income Illinois residents in the area of employment law. WHLC has played a significant role in advising the Illinois Legislature in the passage of the legislation to provide workplace protections for low wage workers, including the recent amendments to the Illinois Wage Payment and Collection Act and the Illinois Day and Temporary Labor Services Act. WHLC is funded by the Chicago Bar Foundation, the Illinois Equal Justice Foundation, the Lawyers' Trust Fund, among others, and has received *cy pres* funds in other class action litigation settlements involving low wage laborers. In the interest of full disclosure, as discussed further *infra*, Plaintiffs' Counsel is a founder and former Director of WHLC but is no longer employed by WHLC and will receive no personal benefit from any *cy pres* funds received by WHLC.

Settlement Fund will go to a non-profit organization whose primary mission is to serve that very population.

### 2. The Settlement Was Reached Through Arm's-Length Negotiations.

Arm's-length negotiations conducted by competent counsel constitute *prima facie* evidence of fair settlements. *Berenson v. Faneuil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair.").

The Settlement here is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation in general and with the legal and factual issues of the Defendants' industry. In negotiating this settlement, Plaintiffs' counsel had the benefit of years of experience advocating the interests of low wage laborers combined with an in-depth familiarity with the facts of this case. In his former capacity as founder and Director of the non-profit Working Hands Legal Clinic, Plaintiffs' Counsel served as an expert advisor to the legislative sponsors of the 2010 amendments to the Illinois Wage Payment and Collection Act, the 2007 amendments to the Illinois Minimum Wage Law and the 2006 amendments to the Illinois Day and Temporary Labor Services Act. In addition, Plaintiffs' Counsel has successfully litigated and resolved over 30 class actions involving low wage laborers in the logistics and temporary staffing industry. Similarly, Counsel for Defendants are experienced class action litigators with substantial experience in Defendants' industry.

Settlement negotiations in this case took place over the course of many months. After a period of extensive investigation and discovery, frequent meetings between Class Counsel and the Named Plaintiffs,  and a Court-assisted settlement conference on November 30, 2012, the Parties reached agreement on a settlement framework in this matter on. The Parties' negotiations over the final terms of the Settlement Agreement, resulted in the Stipulation of Settlement

attached hereto as Attachment 1. Plaintiffs' Counsel supports the resulting settlement as fair and as providing reasonable relief to the members of the class.

### 3. The Settlement Provides Substantial Relief for Class Members

The Settlement provides relief for all Class members. All Class Members will receive a substantial cash payment from the Gross Class Settlement Fund proportional to the hours that they worked for Defendants and the number of Class Members that file timely claim forms. Any residual amount remaining from the Class Settlement Proceeds will be distributed equally to a charitable organization and Defendants.

### 4. Payments to Named Plaintiffs are Appropriate and Reasonable.

Pursuant to the Agreement, each Named Plaintiff shall receive a payment of $5,000.00 for settlement of their claim for owed wages, including minimum wages, overtime wages, earned vacation pay and wages at the rate agreed to by the parties. Each Named Plaintiff shall also receive a payment of $10,000.00 for settlement of their claim for retaliation and wrongful termination and for their release as to Defendants from any other claims against Defendants, including their right to reinstatement. All payments to Named Plaintiffs shall be separate and apart from the Gross Class Settlement fund. As a result, the Named Plaintiffs are not receiving preferential treatment in the settlement of their class claims.

### 5. Plaintiffs' Request for 28 8/9% of the Settlement Amount for Attorneys' Fees and Costs is Fair and Reasonable

Section 12 of the Settlement Agreement provides that Plaintiffs' Counsel will receive twenty-eight and 8/9 percent (28 8/9%) of the Settlement Amount or Sixty Five Thousand Dollars ($65,000.00) for all attorneys' fees and costs incurred and to be incurred in seeing this matter through Final Approval, including: (i) obtaining Preliminary Approval from the Court; (ii) responding to inquiries from and otherwise assisting Class Members regarding the Settlement;

(iii) assisting in the review of claims submitted by Class Members; (iv) assisting in resolving any objections; and (v) defending the Settlement and securing the Final Order, including the conduct of any appellate action.

When the Settlement Amount in this case was negotiated, Defendants' offer was an "all in" global settlement offer, which included all aspects of the settlement consideration relief to the class, attorneys' fees, expenses, and costs. Such settlements, known as "common fund" settlements, are preferred by the law and fees are awarded from such settlement funds by the Court under "common fund" principles.

It is well settled under the "common fund" doctrine that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *Boeing Co. v. Van Gement,* 444 U.S. 472, 478 (1980). The common fund doctrine permits plaintiffs' counsel to petition the court for fees out of a common fund created for the benefit of the plaintiff class. *Id.* The common fund doctrine is based on the idea that "those who have benefited from the litigation should share its costs." Id. at 563 (common fund principles "properly control a case which is initiated under a statute with a fee shifting provision, but is settled with the creation of a common fund"), citing *Skelton v. General Motors Corp.,* 860 F.2d 250, 252 (7th Cir. 1989). Where a common fund is created in return for release of a defendant's liability for damages and for statutory attorneys' fees, the district court's award of fees must be guided by equitable fund principles. Skelton, 860 F.2d at 256.

In 1984, the Supreme Court observed that, under the common fund doctrine, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). Since *Blum*, a majority of the circuits, including our own, have affirmed that the percentage-of-the-fund method is available to the district court. *Blackburn v.*

*Sundstrand Corp.*, 115 F.3d 493, 494 (7th Cir. 1997). "The common fund doctrine rests upon the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched." *Bishop v. Burgard*, 198 Ill.2d 495, 509, 764 N.E.2d 24, 33, 261 Ill. Dec. 733 (2002) (*emphasis added*) (*citing Boeing Co v. Van Gemert*, 444 U.S. 472, 478, 62 L. Ed. 2d 676, 100 S. Ct. 745(1980)).

The percentage-of-the-fund method is commonly used in awarding attorneys' fees in class action settlements of wage and hour cases bought under the IMWL, and IWPCA by both federal and state court judges. Courts in this district have regularly awarded Class Counsel a percentage of the common fund for attorneys' fees and costs in litigating class action cases.[4] Other courts in this district also commonly award attorney's fees equal to one-third or more of the total recovery. *See e.g.*, *Johnson, et al v. CHA, et al.*, 94 C 7692 (N.D.Ill.1998) (Plunkett, J.) (awarding one-third of the fund for attorneys' fees plus costs). Indeed, courts around the country frequently award fees in common fund cases in the 30% to 50% range. *See* 18 Class Action Reports at 537 (1995).

---

[4] See the following cases from the Northern District of Illinois and the Chancery Court of the Circuit Court of Cook County involving Class Counsel: *Craig v. EmployBridge et al.*, Case No. 11 C 3818,(N.D. ILL.)(D.E. No. 75) Order dated April 4, 2013, awarding 30% of the $450,000 common fund in an FLSA, IMWL, IWPCA and IDTLSA case for attorneys' fees and costs to plaintiffs' counsel; *Ramirez et al. v. Paramount Staffing, Inc. et al.*, Case No. 11-C-4163 (N.D. ILL.)(D.E. No. 40) Order dated January 29, 2013, awarding 27 1/3% of $600,000 common fund in an IWPCA vacation pay case for attorneys' fees and costs to plaintiffs' counsel; *.Francisco, et al. v. REM Staffing, et al.*, Case No. 11-2162 (N.D. Ill.)(D.E. No. 43, Order dated May 24, 2012, awarding 33 1/3% of common fund in FLSA, IMWL, IWPCA and IDTLSA case); *Jones et al. v. Simos Insourcing Solutions, Inc. et al.*, Case No. 11-3331 (N.D. Ill.)(D.E. No. 35, Order dated May 4, 2012, awarding 33 1/3% of common find in IWPCA and IDTLSA case); *Ochoa et al. v. Fresh Farms International Market, Inc. et al.*, Case No. 11-2229 (N.D. Ill.)(D.E. No. 29, Order dated July 10, 2012, awarding 18% of common find in overtime case); *Ramirez et al. v. Paramount Staffing, Inc. et al.*, Case No. 11-4163 (N.D. Ill.)(D.E. No. 40) Order dated January 29, 2013 awarding 27 1/3% of common fund in IWPCA and IDTLSA claim); *Alvarez et al. v. Staffing Partners, Inc. et al.*, Case No. 10-6083 (N.D. Ill.)(D.E. No. 63, Order dated January 17, 2012, awarding 27 1/2% of common fund in FLSA, IMWL, IWPCA and IDTLSA case); *Bautista et al. v. Real Time Staffing Services, Inc. et al.*, Case No. 10-0644 (N.D. Ill.)(D.E. No. 58, Order dated August 28, 2012, awarding 18 3/4% of common fund in FLSA, IMWL, IWPCA and IDTLSA case); *Herrera, et al. v. Chicago Mattress, Inc*., Case No. 06-1872 (D.E. No. 49, Order awarding 33% of common fund in overtime case); *Acosta, et al. vs. Scott Labor, et al.*, Case No. 05-2518 (D.E. No. 120, Order awarding 33 1/3% of common fund in overtime case); *Ortegon, et al. v. Staffing Network, Inc*., Case No. 06 CH 12679 (Order dated July 24, 2009, awarding 33% of common fund in IDTLSA and overtime case).

In light of the fact that Plaintiffs' Counsel agreed to take this case on a contingency fee basis, agreed to pay all of the costs of the litigation and assumed the risk of there being no recovery, the fee requested here, which represents twenty-nine (29%) of the total Settlement Amount, is fair and reasonable, is less than the typical of the amount of awards made in the Chicago area and is consistent with the contingency fee arrangement with the Class Representative.

## CONCLUSION

For the foregoing reasons, the Plaintiffs move this Court to: (i) grant this Unopposed Motion for Preliminary Approval of the Stipulation of Settlement; (ii) approve class certification and collective action of the class as identified herein; (iii) approve the Notice of Class Action, Proposed Settlement and Hearing; (iv) authorize notice to the Class; (v) set a date for the Fairness Hearing; and (vi) grant all further relief deemed just and proper.

**For Plaintiffs:**                                      **For Defendants:**

s/Christopher J. Williams                           s/Jeffrey Risch
CHRISTOPHER J. WILLIAMS                  JEFFREY RISCH
ALVAR AYALA                                         SARA ZORICH
Workers' Law Office, PC                            SmithAmundsen, LLC
401 S. LaSalle Street, Suite 1400             150 N. Michigan Avenue, Suite 3300
Chicago, Il 60605                                      Chicago, IL 60601
(312) 795-9121                                         (312) 894-3200

Attorney for Plaintiffs                              Attorney for Defendants

Dated: May 13, 2013                               Dated: May 13, 2013